**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NATURES WAY MARINE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0005-WS-B** |
| | ) | |
| **NORTH AMERICA MATERIALS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 15) against defendant, North America Materials, Inc. Defendant has been placed on notice of the default proceedings against it, but has not availed itself of its full and fair opportunity to be heard in opposition to plaintiff's request.

**I. Background.**

On January 2, 2008, plaintiff Natures Way Marine, LLC, initiated this action against North America Materials, Inc. by filing a Complaint (doc. 1) in this District Court. The Complaint alleged that Natures Way and North America Materials entered into a contract pursuant to which Natures Way was to provide towboats and barges to transport defendant's cargoes of aggregate rock between various locations on the Inland Waterway System. The contract provided that North America Materials would compensate Natures Way for such services to the tune of $3,600 per towboat per day, plus fuel and lube oil for each towboat, and $250 per day for each barge. According to the Complaint, Natures Way provided such services, and invoiced them in amounts exceeding $250,000, which defendant has not paid, despite due demand. The Complaint alleges that the unpaid fuel and lube expenses owed by North America Materials is approximately $121,435.30. On that basis, the Complaint alleges claims against defendant for breach of contract and fraud, with the latter claim arising from allegations that North America Materials had provided Natures Way a partial payment check of $73,100.54, but stopped payment on same before plaintiff could deposit it, such that defendant intended to defraud plaintiff in providing the check to it.

On January 23, 2008, plaintiff filed a Return of Service (doc. 8) reflecting that defendant had been served with process via its registered agent by certified mail on January 17, 2008. Some time later, plaintiff filed a second Return of Service (doc. 9) reflecting that defendant had been served with process via a second registered agent by certified mail on January 26, 2008.[1] Pursuant to Rule 12, Fed.R.Civ.P., defendant's answer or other responsive pleading was due by no later than February 15, 2008; however, defendant has never responded or otherwise appeared in these proceedings. Upon application by Natures Way, a Clerk's Entry of Default (doc. 13) entered on March 5, 2008, with the Clerk of Court providing notice of same to defendant at both service addresses. On March 7, 2008, Natures Way filed a Motion for Default Judgment (doc. 15) and supporting evidentiary materials. Despite notice of same, North America Materials has failed to acknowledge or otherwise oppose the pending default proceedings against it.

## II. Analysis.

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure ... to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit against it for more than two months after being served, entry of default judgment may be appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Rule

---

1 By all appearances, this service was proper. Court records reflect that plaintiff perfected service on defendant through The Corporation Company, 2000 Interstate Park Dr., Suite 204, Montgomery, AL 36109, and also through James W. Wink, Jr., 2082 W. SR 45, Rockport, IN 47635. (*See* docs. 8, 9.) The Court takes judicial notice that Alabama Secretary of State records confirm that the former is North America Materials' registered agent for service of process in the State of Alabama, while the latter accurately reflects North America Materials' business address on file with the Alabama Secretary of State.

55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to defend the claims against them following proper service of process. *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond to counterclaim within time provided by Rule 12(a)(2)). In short, then, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted).[2]

---

[2] To be sure, courts have generally required some notice to be given to a defendant between the time of service of process and entry of default judgment. *See, e.g., International Brands USA, Inc. v. Old St. Andrews Ltd.*, 349 F. Supp.2d 256, 261 (D. Conn. 2004) ("Where a party fails to respond, ***after notice*** the court is ordinarily justified in entering a judgment against the defaulting party.") (emphasis added and citations omitted); *F.T.C. v. 1263523 Ontario, Inc.*, 205 F. Supp.2d 205, 208 (S.D.N.Y. 2002) (entering default judgment where defendants had failed to respond in any way to summons, complaint and motion for default judgment); *New York State Teamsters Conference Pension and Retirement Fund v. Fratto Curbing Co.*, 875 F. Supp. 129, 131 (N.D.N.Y. 1995) (defendant that had failed to file answer to complaint or otherwise defend was properly notified of motion for default judgment). For unknown reasons, plaintiff elected not to give North America Materials notice of its efforts to secure a default, as the Application for Entry of Default (doc. 11) was unaccompanied by a Certificate of Service or other indicia that plaintiff had placed defendant on notice that it was seeking entry of default. Nothing in the text of Rule 55 excuses the service requirement for requests for entry of default (as distinguished from motions for default judgment). Nonetheless, any harm arising from plaintiff's omission is negated by the fact that the Clerk of Court mailed copies of the Clerk's Entry of Default to North America Materials at both addresses where service of process was perfected. As such, defendant is on notice that plaintiff has moved forward with default proceedings, yet it has chosen not to defend itself. Given North America Materials' failure to appear in this case, despite actual notice that this lawsuit was pending, that its responsive pleading was due by a date certain, and that a default had been entered against it, defendant is entitled to no further notice at this time antecedent to entry of default judgment. *See* Rule

The law is clear, however, that North America Materials' failure to appear and the Clerk's subsequent entry of default against it do not automatically entitle plaintiff to a default judgment. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp.2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

Review of the Complaint confirms that it does indeed assert sufficiently specific and detailed facts against North America Materials to state cognizable claims. As described *supra*, the Complaint reflects that the parties entered into a contract, that plaintiff performed its obligations under said contract, and that defendant failed and refused to perform its corresponding obligations to compensate plaintiff at the agreed-upon rate for its services. Moreover, "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp.2d 782, 783 (E.D. Tex. 2006) ("The effect of the entry of default is that it cuts off the defendants' right to appear in the case with respect to liability issues."). Thus, the legal effect of defendant's default in this case is that it has admitted all well-pleaded facts in the Complaint.

While well-pleaded facts in the complaint are deemed admitted, plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Miller v. Paradise of Port Richey, Inc.*, 75

55(b)(2) (defaulted defendant is entitled to notice of request for default judgment only if defendant has appeared in the action).

F. Supp.2d 1342, 1346 (M.D. Fla. 1999); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (federal law requires judicial determination of damages absent factual basis in record); *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (even where default judgment is warranted based on failure to defend, allegations in complaint with respect to damages are not deemed true, and district court must conduct inquiry in order to ascertain damages with reasonable certainty); *Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 869-70 (S.D. Ga. 1996) (explaining that it is proper exercise of judicial power for court upon default to take evidence, fix amount which prevailing party should recover, and then give judgment). "The trial judge, sitting without a jury, has considerable latitude in determining the amount of the damages." *Patray*, 931 F. Supp. at 870. Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation. *See, e.g., S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (explaining that evidentiary hearing is not *per se* requirement for entry of default judgment, and may be omitted if all essential evidence is already of record).[3]

Unfortunately, plaintiff's fragmentary and incomplete evidentiary showing submitted with its Motion for Default Judgment raises more questions than it answers as to the proper amount of damages in this case. Too often, plaintiff tosses around various dollar figures in offhand fashion without explaining where they come from or offering backup documentation. In particular, plaintiff's Memorandum (doc. 16) claims "charges totally [*sic*] $428,110.84," (*id.* at ¶

---

[3] *See also Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover); *Ford Motor Co. v. Cross*, 441 F. Supp.2d 837, 848 (E.D. Mich. 2006) (Rule 55 "does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect"); *Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp.2d 1222, 1225 (N.D. Cal. 2005) ("A formal hearing is not required for a court to render a default judgment."); *Adkins v. Teseo*, 180 F. Supp.2d 15, 17 (D.D.C. 2001) (although court must make independent determination of the sum to be awarded, court need not hold a hearing, but may rely on detailed affidavits or documentary evidence); *United States v. Cabrera-Diaz*, 106 F. Supp.2d 234, 243 (D.P.R. 2000) (similar).

11), plus attorney's fees, but where does that figure come from? How was it calculated? The only component parts described in the Memorandum are these: (a) the claim for "$271,435.30 as a result of the breach of contract and failure of Defendant to pay invoices and fuel and lube as required by the contract" (doc. 16, ¶ 11); and (b) the stop-payment check "in the amount of $73,154.00" (*id.*), which is a different figure than that pleaded in the Complaint and which should already be encompassed in the $271,435.30 figure because it represented amounts owed under the contract. So how does plaintiff get from $271,435.30, to $428,110.84? More fundamentally, where does the $271,435.30 figure come from? The invoices appended to plaintiff's Memorandum as Exhibit B, while extremely difficult to read because of how they were scanned, total slightly over $120,000.00, and appear limited to fuel and lube charges. (*See* doc. 16, Exh. B.) Additionally, the Affidavit of Jay Simon reflects unpaid fuel and lube expenses of $121,435.30, which approximately matches the invoices found at Exhibit B. (*See* doc. 17, ¶ 4.) So far, so good.

But there is minimal evidence of unpaid amounts billed to North America Materials for services rendered. No invoices are attached, although they surely exist. No itemized breakdown of which expenses were incurred when is provided. At most, the Simon Affidavit states as follows: "Natures Way invoiced North America for services rendered under the contract, and at the present time, there is due and owing $428,110.84, which has not been paid, through [*sic*] duly demanded." (Doc. 17, ¶ 3.) But this amount is substantially higher than the $271,435.30 figure cited in Natures Way's Memorandum as unpaid amounts invoiced as of the Complaint's filing date. Plaintiff has not explained the discrepancy. To add further uncertainty, the dollar amount in the Simon Affidavit is written in a blank in what appears to be someone's handwriting other than Simon's. Thus, it is unclear whether Simon ever saw that figure or whether he simply signed the Affidavit with the blank to be filled in by someone else later on without his knowledge.[4] Finally, the Court cannot tell whether the $428,110.84 figure does or does not

---

[4] While the undersigned does not profess to be a handwriting expert, the handwriting for the numbers on the Simon Affidavit bears striking resemblance to those on the "green cards" for return of service for defendant. This suggests that the blank was filled in by a staffer in plaintiff's counsel's office, not by Simon. How can Simon have personal knowledge of a figure that may not even have been stated on his Affidavit when he signed it?

include the $121,435.30 amount for fuel and lube.

For all of these reasons, plaintiff's evidentiary showing is simply insufficient to enable the Court to determine the proper amount of contract damages at this time. The Court will not rubber stamp damages figures whose origins, meaning, and constituent parts are indeterminate and unexplained. It is incumbent on plaintiff, as the party seeking default judgment, to make a detailed evidentiary showing of damages, beyond mere conclusory statements proffering figures that do not add up. Plaintiff's damages should be readily provable by reference to objective documentation that simply has not been furnished to this Court. To be sure, plaintiff has adequately demonstrated its unpaid fuel and lube charges. What the Court requires, however, is sworn, authenticated evidence of other contract damages, to-wit: the total amounts billed to North America Materials under the contract for services rendered (other than lube and fuel charges), preferably via itemized invoices showing date, time and amount; as well as sworn evidence that those billed amounts have not been paid. Conclusory evidence whose calculations and factual underpinnings cannot be discerned are insufficient and will not be accepted.

Accordingly, plaintiff is **ordered**, on or before **April 7, 2008**, to supplement its evidentiary submission as specified herein. The Court will enter final ruling on the Motion for Default Judgment after that date.

DONE and ORDERED this 24th day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE