**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NATURES WAY MARINE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0005-WS-B** |
| | ) | |
| **NORTH AMERICA MATERIALS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 15) against defendant, North America Materials, Inc., as well as on plaintiff's Supplemental Memorandum in Support of Motion for Default Judgment (doc. 19).

On March 7, 2008, plaintiff, Natures Way Marine, LLC, filed its Motion for Default Judgment and supporting evidentiary materials, requesting that the Court enter a default judgment against North America Materials in the amount of $428,110.84, plus interest, attorneys fees and costs. On March 24, 2008, the undersigned entered an Order (doc. 18) finding that entry of default judgment against North America Materials was warranted under the circumstances, but deeming plaintiff's evidentiary submission inadequate to enable the Court to fix damages. Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters," and not to award damages that are uncertain or speculative. *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).[1] Because plaintiff's evidentiary submission was incomplete and inconclusive in critical respects, such that the proper amount of damages could not be fixed with reasonable certainty, the March

---

[1] *See also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Capitol Records v. Carmichael*, 508 F. Supp.2d 1079, 1084 n.4 (S.D. Ala. 2007) (observing that "plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages").

24 Order directed plaintiff to supplement its submission, which it has now done.

Exhibit A to Plaintiff's Supplemental Memorandum (doc. 19) purports to itemize and enumerate all invoices billed from Natures Way to North America Materials which are claimed as damages in this case.[2]  Those invoices total $460,735.99 in amounts payable, as well as credits of $25,200, for a total net damages figure of $435,535.99.  To reconcile this amount with the $428,110.84 figure sought in plaintiff's previous default judgment submission, as well as the Affidavit of Jay Simon, which was proffered in both sets of default judgment submissions (doc. 17, Exh. A, and doc. 19, Exh. C), plaintiff states that it is not asserting a claim for the difference of $7,425.15.

Scrutiny of the invoices reveals a significant problem: Two of them appear entirely unrelated to this lawsuit.  The first 11 invoices (totaling $347,325.54) date from April 27, 2007 through June 27, 2007; are billed to North America Materials, Inc. in Rockport, Indiana; and appear to relate to the pushboat and barge services identified in the Master Contract for Movement of Rock (doc. 1, Exh. A) that lies at the core of this action.  Inexplicably, however, the next two invoices (totaling $113,410.45) are, by all appearances, totally divorced from this dispute.  Both of these invoices are billed to a company called Rein International Group, LLC in Deluth, Georgia, and relate to the sale and loading of more than a half-million pounds of 3" anchor chain in late October 2007 (some 4 to 6 months after the other transactions identified in the invoices).  Nothing in plaintiff's evidentiary submission would support a finding that these invoices have anything to do with North America Materials or the subject Master Contract for Movement of Rock.  Indeed, nothing in the Complaint, the Master Contract, or plaintiff's evidentiary filings suggests that Natures Way sold anchor chain to North America Materials, that North America Materials failed to pay for any such anchor chain, that Rein International Group is linked in any respect to North America Materials, or that the transactions between plaintiff and

---

[2]       These invoices do not match up in certain respects with the backup documentation furnished by Natures Way in its initial default judgment submission.  Based on plaintiff's intentions as set forth in the Supplemental Memorandum, the Court will credit the more recent backup as a comprehensive recitation of the invoices issued and the damages claimed herein, and will disregard inconsistencies with previously submitted documentation.

Rein are at all compensable in these proceedings.[3]

Frankly, plaintiff's error is difficult to comprehend.  The March 24 Order unequivocally placed plaintiff on notice of the need to get its damages documentation in order.  Yet plaintiff did not comply.  What's more, plaintiff's counsel submitted an Affidavit (doc. 19, Exh. B) averring that he has reviewed the invoices and that they are true and correct to the best of his knowledge.  Even looking past the problematic notion that plaintiff's counsel would possess first-hand knowledge of the accuracy of amounts billed by his client last year, his sworn representation is dubious, at best.  Any reasonable inspection of the invoices found at Exhibit A of the Supplemental Memorandum would reveal that the Rein invoices are unrelated to any facts or claims articulated in the Complaint, and that the $113,410.45 in billed amounts therein should not be counted towards plaintiff's damages in this dispute.  Surely counsel would have recognized those facts had he carefully reviewed Exhibit A before filing it with this Court.  Such inattentiveness is distressing, particularly when counsel was being afforded a second chance to rectify glaring errors in the materials submitted the first time around.

Where does this leave us?  Plaintiff has submitted documentation demonstrating that the invoices sent to North America Materials under the Master Contract total $347,325.54, and that plaintiff credited $25,200.00 against those invoices for periods in which the push boats were down or otherwise being repaired.  That leaves a net amount of unpaid invoices in the amount of $322,125.54.  These contract damages have been adequately proven on the record and will be awarded against North America Materials via default judgment.

Plaintiff's Supplemental Memorandum requests that this amount be augmented by an award of attorney's fees and costs.  Nothing in that Supplemental Memorandum would enable

---

[3]      To make matters worse, there is obvious double-counting occurring between the two Rein International invoices.  The first of those invoices, Invoice #1087, is dated 11/8/2007, and is in the amount of $60,431.00.  The second invoice is labeled "Statement," is dated 12/11/2007, and specifically lists among the amounts owed Invoice #1087, as well as two other invoices (not provided in plaintiff's evidentiary materials), and various payments made by Rein (again, not provided in the evidentiary materials).  Although this "Statement" clearly encompasses Invoice #1087, plaintiff simply lumps them together, thereby counting Invoice #1087 twice in computing the total amount for which default judgment is sought.  It is abundantly clear that Invoice #1087 should not have been counted once in the damage calculations, much less twice.

-3-

the Court to determine the amount of attorney's fees that Natures Way has accrued in this action, much less provide a legal basis for such an award. Going back to Natures Way's initial filing on the default judgment, it appears that plaintiff's reasoning for seeking attorney's fees is as follows: "Plaintiff further request [sic] attorney fees pursuant to Code of Alabama § 6-5-285 in the amount of $24,343.48, which is 1/3 of the amount of the bad check." (Doc. 16, at 5.) This argument does not withstand scrutiny.[4]

By its terms, § 6-5-285 merely authorizes, but does not require, an attorney's fee award. Indeed, the statute provides that the holder of a worthless check has a right of action against the person who uttered the check, and that the plaintiff "may recover such damages ..., including a reasonable attorney fee, as the jury or court trying the case may assess." Ala. Code § 6-5-285. Plaintiff's request for $24,343.48 in attorney's fees for the bad check claim is patently unreasonable. Although plaintiff has submitted no evidence of its attorney's fees, it would shock the conscience if such fees approached that amount for the simple tasks of drafting a complaint, effecting service of process, and then filing a motion and supporting documentation for entry of default judgment. The Court will not award attorney's fees that are grossly disproportionate to any amount that plaintiff might reasonably have incurred. Furthermore, it is pellucidly clear that the bad check cause of action is a mere tagalong claim and that the thrust of the Complaint is plaintiff's attempt to recover several hundred thousand dollars (including the amount of the bad check) in contract damages for the unpaid invoices. The only damage that plaintiff appears to have suffered from defendant's submission of a bad check was a $25 fee from its financial institution, which is included in the $322,125.54 figure cited above. It would be incongruous, indeed, to award nearly $25,000 in attorney's fees arising from legal maneuvering to recover a $25 bad check fee. More to the point, the Court is convinced that all or substantially all of plaintiff's attorney's fees in this action have been incurred in connection with the breach of

---

[4]     The Complaint alleges that on or about June 26, 2007, plaintiff received from defendant a check in the amount of $73,100.54 in partial payment of services rendered under the Master Contract, but that defendant stopped payment on the check before plaintiff deposited it in its bank account. (Complaint, ¶¶ 12-13.) The Complaint does not allege that plaintiff did or failed to do anything as a result of that bounced check, or that it incurred any damages whatsoever arising from same other than the $25 bad check fee imposed by its financial institution.

contract claim, and that any attorney's fees incurred specifically as to the bad-check claim have been negligible, perhaps even nonexistent.  Certainly, there is no evidence that plaintiff has incurred any attorney's fees relating to the bounced check claim.  Accordingly, in its discretion and pursuant to § 6-5-285, no attorney's fees will be awarded on this claim.  And, of course, no attorney's fees are compensable for the breach of contract claim animating this dispute.  *See generally Cincinnati Ins. Co. v. City of Talladega*, 342 So.2d 331, 338 (Ala. 1977) (reciting general rule that attorney's fees are not recoverable absent statute, contract, or recognized equitable grounds).[5]

For all of the foregoing reasons, as well as those set forth in the Order (doc. 18) dated March 24, 2008, plaintiff's Motion for Default Judgment (doc. 15) is **granted**.  A default judgment will be entered in plaintiff's favor in the amount of **$322,125.54**.

DONE and ORDERED this 16th day of April, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]      Plaintiff's initial memorandum in support of default judgment (but not the Motion itself) also requests prejudgment interest; however, plaintiff makes no mention of same in its Supplemental Memorandum, but instead limits its damage requests to unpaid invoices, attorney's fees, and costs.